UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
AT BROWNSVILLE

| | |
|---|---|
| CRISTINA MUÑOZ, <br><br> Plaintiff, <br><br> v. <br><br> THE LAREDO COCA-COLA BOTTLING COMPANY, INC., <br><br> Defendant. | Civil Action No. 1:04-CV-00066 |

### AFFIDAVIT OF LEE GUERRA

STATE OF TEXAS        )
COUNTY OF HIDALGO   )

This day, personally appeared before me, the Affiant, Lee Guerra, who, after first being duly sworn by me, deposes and says the following:

1. My name is Lee Guerra. I am over twenty-one (21) years of age and am otherwise fully competent to make this affidavit.

2. At all times relevant hereto, I have held the position of Branch Manager of the McAllen, Texas facility of Laredo Coca-Cola Bottling Company, Inc. and Coca-Cola Enterprises Inc.

3. Laredo Coca-Cola Bottling Company is a bottler and distributor of soft drinks and other products.

4. In August of 2002, I became the Branch Manager for the McAllen, Texas facility.

5. At the time I assumed this position, the Branch Secretary, who was also my secretary, was Cristina Munoz.

Apx.-62

6. Shortly after assuming the position of Branch Manager, I was told by the Employee Relations Manager for the McAllen facility, Denise Martinez, that Ms. Munoz had had some issues concerning the facility's Nextel and credit card bills in the past.

7. As Branch Secretary, Ms. Munoz was responsible for reviewing the facility's bills for their accuracy before submitting them to me for approval for payment. She also was responsible for completing any payroll deduction forms which were necessary based on employees purchasing equipment through the Company Nextel account or exceeding their allotted amount of Company Nextel phone usage per month.

8. Accordingly, when Ms. Munoz presented me with a stack of Nextel bills for the months of July through September in mid-to-late September, I asked her to see the backup statements which gave the detail on the bills (i.e., explained what the bills were for). I also made this request because the totals on these bills were very large compared to previous bills.

9. Ms. Munoz brought me these statements, but some of the pages were missing.

10. I then asked Ms. Martinez to help me review these statements since she already was familiar with this issue and they were about ten inches thick.

11. Ms. Martinez then let me know that the missing pages contained a description of equipment which had been purchased by use for Ms. Munoz and two co-workers who were friends of Ms. Munoz.

12. A few days later Ms. Martinez told me that she had spoken with Ms. Munoz and the other employees involved in this matter and that Ms. Munoz had not been honest with her concerning the circumstances surrounding the purchase of at least one of the phones at issue and that she had a signed written statement from the employee who purchased this phone refuting Ms. Munoz's

account. Ms. Martinez also told me that this phone purchase involved the employee giving Ms. Munoz cash which she could not account for but had said she just put in her desk.

13. Lying during a Company investigation is expressly prohibited in our Company policies. It is especially critical that someone in Ms. Munoz's position be trustworthy. Accordingly, our Human Resources department recommended that Ms. Munoz be terminated from her employment with the Company. I agreed with this recommendation along with the Area Vice President, Carlos Ramos, who is also Ms. Munoz's brother-in-law.

14. This agreement was not based on or "in retaliation for" Ms. Munoz's earlier comments concerning me but would have been taken place regardless of these comments.

15. On or about September 18, 2002 I also had had a meeting with the District Sales Managers of the McAllen facility to discuss some specific issues Ms. Munoz had shared with Mr. Ramos. I also discussed with them generally that if they had issues concerning their work they should bring them to me, Human Resources or another member of management who could help them resolve the issues rather than just discussing the issues with other co-workers who have no authority to deal with them.

16. The purpose of this meeting was not to "retaliate" against Ms. Munoz, but rather to remind the McAllen District Sales Managers of proper protocol to follow in addressing work issues.

17. Some of the District Sales Managers and other employees of the McAllen facility had apparently gotten into the habit of spending time in Ms. Munoz's office just venting to her about their problems under the previous Sales Center Manager. Listening to or dealing with employee issues is in fact not part of Ms. Munoz's job. In my meeting with the District Sales Managers I reminded them of this.

18.     I did not tell the District Sales Managers to ignore Ms. Munoz or otherwise to treat her negatively or badly or that I was mad at her. I simply told them that it was not part of her job to listen to or deal with their work issues, and that they should direct any concerns they had to managers and others who were in positions to resolve them.

19.     I told Ms. Munoz the same thing concerning work issue protocol shortly after my meeting with the District Sales Managers. I also told her that I had never meant for any conduct by me to make her uncomfortable.

20.     Any gifts I gave to Ms. Munoz or any other female employee of the McAllen facility were purchased by my wife, such that I never considered any of them to be inappropriate or sending a "romantic" message. Such gifts would only have been given on special occasions like Secretaries'/Administrative Assistants' Day or a birthday, Christmas, etc. and were given to all the females who worked in the office, not just Ms. Munoz.

21.     I have hugged both male and female employees of the McAllen office. I do not recall hugging Ms. Munoz specifically, but if I did, it was in the same spirit as these other employees – to say hello or good job, thank you, etc.

22.     I have not looked down Ms. Munoz's blouse.

23.     During her employment, Ms. Munoz never expressed to me that anything I did or said toward her made her feel uncomfortable or was something she would rather I not do.

**FURTHER THIS AFFIANT SAITH NOT.**

_____
Lee Guerra

Sworn to and subscribed before me this _16_ day of ___March___, 2005.

_____
Notary Public

DENISE MARTINEZ-ALDANA
Notary Public, State of Texas
My Commission Expires
December 10, 2008

My Commission Expires: _December 10, 2008_