# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## AT BROWNSVILLE

**CRISTINA MUÑOZ,**

        **Plaintiff,**

**v.**

        **Civil Action No. 1:04-CV-00066**

**THE LAREDO COCA-COLA BOTTLING
COMPANY, INC.,**

        **Defendant.**

## AFFIDAVIT OF CARLOS RAMOS

**STATE OF TEXAS**     **)**
**COUNTY OF BEXAR**    **)**

       This day, personally appeared before me, the Affiant, Carlos Ramos, who, after first being duly sworn by me, deposes and says the following:

1.    My name is Carlos Ramos. I am over twenty-one (21) years of age and am otherwise fully competent to make this affidavit.

2.    At all times relevant hereto, I have held the position of Area Vice President in the Southwest Texas Division of Coca-Cola Enterprises Inc.

3.    The Plaintiff in the above-referenced matter, Cristina Munoz, is my sister-in-law by marriage.

4.    In September of 2002, I received an e-mail from Ms. Munoz raising various issues concerning the new Branch Manager in McAllen, Texas, Lee Guerra.

5.    I met with Ms. Munoz to discuss these issues.

6.      I asked her specifically during this meeting if she felt Mr. Guerra was sexually harassing her – as one of her comments in the e-mail was that Mr. Guerra had hugged her and another was that he would look down her blouse while they were working together.

7.      Ms. Munoz laughed when I asked this question and told me "no," and "not to take this so seriously" and that she "just needed to vent to me about her new boss."  Ms. Munoz also told me that she did not want me to get Human Resources involved or to tell them about her e-mail.  (The e-mail also had been sent with a "lock" on it so that I could not print it out or forward it to anyone.)  She then called me again after this meeting was over to say that she was not making a complaint of sexual harassment against Mr. Guerra and did not want Human Resources to get involved.

8.      I explained to Ms. Munoz that based on my position with the Company I could not just treat her e-mail as "venting" or ignore the issues raised therein and that I would have to get Human Resources involved to investigate based on the nature of the statements she had made concerning Mr. Guerra.

9.      I met with Denise Martinez, the Employee Relations Manager from McAllen.

10.     I then met with Mr. Guerra along with Ms. Martinez to discuss the statements made by Ms. Munoz in her e-mail regarding him.

11.     Mr. Guerra said he did not recall hugging Ms. Munoz and denied looking down her blouse.  He appeared to be shocked by Ms. Munoz's allegations that he had done so.

12.     Ms. Munoz's e-mail to me also had contained comments about the District Sales Managers in McAllen voicing various complaints to her about working with Mr. Guerra as their new Branch Manager.

13.    Mr. Guerra, Ms. Martinez and I agreed that Mr. Guerra should discuss these issues with the District Sales Managers. We also agreed that Mr. Guerra should express to Ms. Munoz that he had not intended to make her feel uncomfortable by any conduct.

14.    In October of 2002, I affirmed the recommendation which was made by Human Resources that Ms. Munoz be terminated.

15.    My decision to affirm Ms. Munoz's termination had nothing to do with the issues she had raised with me earlier in the September, 2002 e-mail and would have been made regardless of these comments.

16.    It was explained to me by Ms. Martinez and other employees in the Human Resources department that Ms. Munoz had lied to Ms. Martinez during a Company investigation of some Nextel phones and that she was unable to give account for cash she had received from an employee which she admitted just putting in her desk. These actions justified termination.

**FURTHER THIS AFFIANT SAITH NOT.**

_____
Carlos Ramos

Sworn to and subscribed before me this _1 7_ day of _March_, 2005.



_Denise Martz_
Notary Public

My Commission Expires: _December 10, 2008_

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## AT BROWNSVILLE

CRISTINA MUÑOZ,

       Plaintiff,

v.

                                              Civil Action No. 1:04-CV-00066

THE LAREDO COCA-COLA BOTTLING
COMPANY, INC.,

       Defendant.

### AFFIDAVIT OF CRUZ RANGEL

STATE OF TEXAS      )
COUNTY OF HIDALGO   )

       This day, personally appeared before me, the Affiant, Cruz Rangel, who, after first being duly sworn by me, deposes and says the following:

1.     My name is Cruz Rangel.  I am over twenty-one (21) years of age and am otherwise fully competent to make this affidavit.

2.     At all times relevant hereto, I have held the position of District Sales Manager for The Laredo Coca-Cola Bottling Company, Inc. and Coca-Cola Enterprises Inc. at the McAllen, Texas facility.  My direct supervisor is Jimmy Silva, Sales Manager.  Mr. Silva's supervisor is Lee Guerra, the McAllen Branch Manager.

3.     Sometime in September of 2002, Mr. Guerra called a meeting of the McAllen facility District Sales Managers.  During this meeting, he talked about the fact that he was new to the position of Branch Manager in McAllen and how he wanted to have a good working relationship with all of his employees.

4.    Mr. Guerra gave some examples of some issues that apparently had been brought to his attention that he believed had been voiced by some of us District Sales Managers.

5.    Mr. Guerra specifically apologized to me during this meeting for offending me by asking me to move his furniture into his new office while he was out of town.

6.    I told Mr. Guerra that this request had not bothered me at all and asked him where he had gotten the idea that it had.

7.    Mr. Guerra told me that he had heard this from Carlos Ramos, our Area Vice-President, and that Mr. Ramos had indicated to him that I had said something to the McAllen facility office secretary, Cristina Munoz (who is Mr. Ramos' sister-in-law) about not liking this request.

8.    I specifically expressed to Mr. Guerra that I have never had any problems working with him and did not know why after he had been at the McAllen facility for eleven (11) months someone would all of a sudden be saying that I did.  I also told Mr. Guerra that I believed Ms. Munoz was trying to make trouble for him and all of us since the former Branch Manager, Ruben Valdez had been transferred.

9.    There were rumors that Mr. Valdez and Ms. Munoz were having an affair while he was the Branch Manager.  Now that he was gone, I felt like Ms. Munoz was worried that she would not have the power she did under Mr. Valdez and so was trying to create problems.

10.    Mr. Guerra was very respectful in his comments relating to Ms. Munoz in response to my comments about her.  He specifically told me that we should continue to treat her just as we always had but just that it was not her job to have to listen to all of our problems.

11.    I did not take away from this meeting that Mr. Guerra was "out to get" Ms. Munoz or was otherwise being negative or trying to make things hard for her.  On the contrary, he seemed to be

Apx.-71

being very respectful and gracious toward her, despite my comments to him that I believed she was out to cause trouble.

12.     All of the District Sales Managers in attendance at this meeting denied having any problem working with Mr. Guerra.  We also denied that any of the specific areas of concern that he raised during this meeting were concerns to us.

13.     During this meeting, Mr. Guerra expressed to us that if we did have concerns or issues in the future that we discuss these with either him, other members of management or Human Resources that could address the concerns, so that they could be resolved.

14.     Mr. Guerra also expressed to us that it was not part of the office secretary's job to listen to and then convey our concerns to him or to other members of management or Human Resources.

15.     Mr. Guerra also expressed that the office secretary was very busy and that our spending a lot of time in her office discussing issues we have with other employees or our jobs with her distracted her from being able to do her work and was not productive because she was not in a position to be able to do anything to resolve concerns we had about work issues.

16.     At the time Mr. Guerra made these comments, the office secretary was Cristina Munoz.

17.     During this meeting, Mr. Guerra did not make any negative comments about Ms. Munoz. He did not tell us not to talk to her, to ignore her or otherwise to treat her badly.  It was my understanding from this meeting that he simply wanted us to deal with any issues or concerns we had directly rather than just sitting around talking about them in the office with Ms. Munoz.

18.     Employees had developed the habit of doing this when Mr. Valdez was the Branch Manager because Ms. Munoz was believed to have his ear in light of their rumored romantic relationship.

**FURTHER THIS AFFIANT SAITH NOT.**

CRUZ RANGEL

Sworn to and subscribed before me this _16_ day of _March_, 2005.

Notary Public

DENISE MARTINEZ-ALDANA
Notary Public, State of Texas
My Commission Expires
December 10, 2008

My Commission Expires: _December 10, 2008_

Apx.-73

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## AT BROWNSVILLE

| | |
|---|---|
| **CRISTINA MUÑOZ,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:04-CV-00066** |
| **THE LAREDO COCA-COLA BOTTLING COMPANY, INC.,** | |
| **Defendant.** | |

### AFFIDAVIT OF FELIPE SANDOVAL

STATE OF TEXAS    )
COUNTY OF HIDALGO   )

This day, personally appeared before me, the Affiant, Felipe Sandoval, who, after first being duly sworn by me, deposes and says the following:

1.    My name is Felipe Sandoval. I am over twenty-one (21) years of age and am otherwise fully competent to make this affidavit.

2.    At all times relevant hereto, I have held the position of District Sales Manager for The Laredo Coca-Cola Bottling Company, Inc. and Coca-Cola Enterprises Inc. at the McAllen, Texas facility. My direct supervisor is Jimmy Silva, Sales Manager. Mr. Silva's supervisor is Lee Guerra, the McAllen Branch Manager.

3.    Mr. Guerra met with me sometime in September of 2002. He had called a meeting previously for the District Sales Managers of the McAllen facility, but I was not able to attend. Accordingly, Mr. Guerra said he wanted to talk with me about what he had discussed with the other District Sales Managers.

4.      During our conversation, Mr. Guerra told me that he had told the other District Sales Managers that he did not want them burdening the office secretary, Cris Munoz, with their work issues.  He said he did not feel the need to tell me this because he was not aware of my hanging out in Ms. Munoz's office talking to her but wanted me to know what had been said in his meeting with the other District Sales Managers.

5.      A week or so after this meeting with Mr. Guerra, Cris Munoz approached me saying she thought I was stuck-up because I never talked to her.  I replied to Ms. Munoz that she was confusing confidence with arrogance and that I did not sit around talking to her because I did not have anything to tell her and was not part of her clique.

6.      I do not have any issues working with Mr. Guerra and have never expressed any to Ms. Munoz.

7.      In my conversation with Mr. Guerra, he did not give me the impression that he was mad at Ms. Munoz or that he wanted me to be mean to her, ignore her or otherwise not to talk to her. He began the meeting by saying that he did not believe that I was one of the ones who spent a lot of time in Ms. Munoz's office anyway, but he simply wanted to give me the same information he had given the other District Sales Managers.

        **FURTHER THIS AFFIANT SAITH NOT**.

FELIPE SANDOVAL

Sworn to and subscribed before me this _15_ day of _March_, 2005.

Notary Public

DENISE MARTINEZ-ALDANA
Notary Public, State of Texas
My Commission Expires
December 10, 2008

My Commission Expires: _December, 10, 2008_

Munoz v CCE - Affidavit of Felipe Sandoval

Apx.-75